**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **Hammond Development International, Inc.,** | § § § | |
| *Plaintiff*, | § § | **Civil Action No. 6:19-cv-00356** |
| **v.** | § § § | |
| **Google LLC,** | § § | **Jury Trial Demanded** |
| *Defendant*. | § § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Hammond Development International, Inc. files this Original Complaint for patent infringement against Google LLC, alleging as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.      Plaintiff **Hammond Development International, Inc. ("Plaintiff" or "HDI")** is a Texas corporation with its principal place of business at 3510 Turtle Creek Boulevard, Apt. 17E, Dallas, Texas 75219-5545.

3.      Defendant **Google LLC ("Google")** is a Delaware corporation with a principal place of business located at 1600 Ampitheatre Parkway, Mountain View, California 94043. Google is registered to do business in Texas and can be served via its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.* This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

5.      Google is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over Google because Google has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over Google because Google has committed acts giving rise to HDI's claims for patent infringement within and directed to this District.

6.      Upon information and belief, Google has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b). Thus, venue is proper in this District under 28 U.S.C. § 1400(b).

7.      Google maintains a global network referred to as the "Google Edge Network." According to Google (source: https://peering.google.com/#/infrastructure), the Google Edge Network's network infrastructure has "three distinct elements:" (1) Core data centers, (2) Edge Points of Presence (POPs), and (3) Edge caching and services nodes (Google Global Cache, or GCG).

8.      Google describes the Google data centers as follows (source: https://peering.google.com/#/infrastructure):

### Data centers

Google operates data centers that we use for computation and backend storage. We have data centers in the Americas, Europe and Asia.

Our data centers are the heart of Google content and services.

Google has built a large, specialized data network to link all of its data centers together so that content can be replicated across multiple sites for resilience, and services can be delivered closest to the end user.

9.     Google    describes    the    Edge    POPs    as    follows    (source: https://peering.google.com/#/infrastructure):

### Edge Points of Presence (PoPs)

Our Edge Points of Presence (PoPs) are where we connect Google's network to the rest of the internet via peering. We are present on over 90 internet exchanges and at over 100 interconnection facilities around the world.

By operating an extensive global network of interconnection points we can bring Google traffic closer to our peers, thereby reducing their costs and providing users with a better experience.

Google operates a large, global meshed network that connects our Edge PoPs to our data centers.

10.     Upon information and belief, Google maintains one or more Edge POPs within the State of Texas.

11.     Google    describes    the    GCGs    as    follows    (source: https://peering.google.com/#/infrastructure):

> **Edge nodes (Google Global Cache, or GGC)**
> Our edge nodes (called Google Global Cache, or GGC) represent the tier of Google's infrastructure closest to our users. With our edge nodes, network operators and internet service providers deploy Google-supplied servers inside their network.
>
> Static content that is very popular with the local host's user base, including YouTube and Google Play, is temporarily cached on edge nodes. Google's traffic management systems direct user requests to an edge node that will provide the best experience.
>
> In some locations, we also use our edge nodes to support the delivery of other Google services, such as Google Search, by proxying traffic where it will deliver improved end-to-end performance for the end user.

12. GCGs are "Google-supplied servers" that are deployed to network operators.

13. A search of available job openings on Google's career page (source: https://careers.google.com) reveals 45 job openings in the Austin, Texas area, including several related to Google Cloud services.

14. Additionally, Google maintains a permanent physical presence within the Western District of Texas, conducting business from at least its locations at 9606 North Mo-Pac Expressway, Suite 700, Austin, Texas 78759; 500 West 2nd Street, Suite 2000, Austin, Texas 78701; 4100 Smith School Road, Austin, Texas 78744; as well as other locations in and around the Austin area.

15. Upon information and belief, Google has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by

consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Pennsylvania and in this judicial district.

16.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §1391 and 28 U.S.C. § 1400(b).

## THE PATENTS-IN-SUIT

17.     This cause of action asserts infringement of United States Patent No. 9,264,483 ("the '483 Patent"), United States Patent No. 9,420,011 ("the '011 Patent"), United States Patent No. 9,456,040 ("the '040 Patent"), United States Patent No. 9,705,937 ("the '937 Patent"), United States Patent No. 9,716,732 ("the '732 Patent"), United States Patent No. 10,193,935 ("the '935 Patent"), United States Patent No. 10,264,032 ("the '032 Patent"), and United States Patent No. 10,270,816 ("the '816 Patent") (collectively, the "Patents-in-Suit").

18.     The '483 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on February 16, 2016, from U.S. Patent Application No. 11,779,722, filed on July 18, 2007, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '483 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

19.     The '483 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

20.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '483 Patent.

21.     An assignment of the '483 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 02406, Frame 0451.

22.     HDI has standing to sue for infringement of the '483 Patent.

23.     The '011 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on August 16, 2016, from U.S. Patent Application No. 14/975,747, filed on December 19, 2015, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '011 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

24.     The '011 Patent is a continuation of the '483 Patent.

25.     The '011 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

26.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '011 Patent.

27.     An assignment of the '011 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 037350, Frame 0081.

28.     HDI has standing to sue for infringement of the '011 Patent.

29.     The '040 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on September 27, 2016, from U.S. Patent Application No. 14/985,926, filed on December 31, 2015, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '040 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

30.     The '040 Patent is a continuation of the '483 Patent.

31.     The '040 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

32.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '040 Patent.

33.     An assignment of the '040 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 037390, Frame 0864.

34.     HDI has standing to sue for infringement of the '040 Patent.

35.     The '937 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on July 11, 2017, from U.S. Patent Application No. 15/236,644, filed on August 15, 2016, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '937 Patent is attached hereto as **Exhibit 4** and is incorporated by reference.

36.     The '937 Patent is a continuation of the '011 Patent, which is a continuation of the '483 Patent.

37.     The '937 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

38.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '937 Patent.

39.     An assignment of the '937 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 039432, Frame 0207.

40.     HDI has standing to sue for infringement of the '937 Patent.

41.     The '732 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on July 25, 2017, from U.S. Patent Application No. 15/241,191, filed on August 19, 2016, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '732 Patent is attached hereto as **Exhibit 5** and is incorporated by reference.

42.     The '732 Patent is a continuation of the '040 Patent, which is a continuation of the '483 Patent.

43.     The '732 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

44.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '732 Patent.

45.     An assignment of the '732 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 039481, Frame 0665.

46.     HDI has standing to sue for infringement of the '732 Patent.

47.     The '935 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on January 29, 2019, from U.S. Patent Application No. 15/613,756, filed on June 5, 2017, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '935 Patent is attached hereto as **Exhibit 6** and is incorporated by reference.

48.     The '935 Patent is a continuation of the '937 Patent, which is a continuation of the '011 Patent, which is a continuation of the '483 Patent.

49.     The '935 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

50.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '935 Patent.

51.     An assignment of the '935 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 042600, Frame 0597.

52.     HDI has standing to sue for infringement of the '935 Patent.

53.     The '032 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on April 16, 2019, from U.S. Patent Application No. 16/257,604, filed on January 25, 2019, naming Daniel D. Hammond as the

sole inventor. A true and correct copy of the '032 Patent is attached hereto as **Exhibit 7** and is incorporated by reference.

54.     The '032 Patent is a continuation the '935 Patent, which is a continuation of the '937 Patent, which is a continuation of the '011 Patent, which is a continuation of the '483 Patent.

55.     The '032 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

56.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '032 Patent.

57.     HDI has standing to sue for infringement of the '032 Patent.

58.     The '816 Patent, entitled "Method and System for Enabling a Communication Device to Remotely Execute an Application," duly and legally issued on April 23, 2019, from U.S. Patent Application No. 16/193,532, filed on November 16, 2018, naming Daniel D. Hammond as the sole inventor. A true and correct copy of the '816 Patent is attached hereto as **Exhibit 8** and is incorporated by reference.

59.     The '816 Patent is a continuation the '935 Patent, which is a continuation of the '937 Patent, which is a continuation of the '011 Patent, which is a continuation of the '483 Patent.

60.     The '816 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

61.     Plaintiff HDI is the owner and assignee of all rights, title, and interest in and under the '816 Patent.

62.     An assignment of the '816 Patent from inventor Daniel D. Hammond to Plaintiff HDI is recorded at the USPTO at Reel 047527, Frame 0913.

63.     HDI has standing to sue for infringement of the '816 Patent.

64.     Google has not obtained a license to any of the Patents-in-Suit.

65.     Google does not have HDI's permission to make, use, sell, offer to sell, or import products that are covered by one or more claims of any of the Patents-in-Suit.

66.     Google needs to obtain a license to the Patents-in-Suit and cease its ongoing infringement of HDI's patent rights.

## GENERAL ALLEGATIONS

67.     Upon information and belief, Google makes, uses, sells, offers to sell, and/or imports into the United States systems for enabling a communication device to remotely execute an application as claimed in each of the Patents-in-Suit. For example, Google Home/Nest Devices (as defined herein) operate on a communication system including a plurality of components, including but not limited to application servers, to allow Google Assistant-enabled devices to remotely execute one or more applications (including applications developed by Google and/or by third-party developers through the Firebase capabilities) associated with Google Home (hereinafter, the "**Google Cloud Platform**").

68.     Upon information and belief, Google makes, uses, sells, offers to sell, and/or imports into the United States communication devices as claimed in each of the Patents-in-Suit, including without limitation Google Home, Google Home Mini, Google Home Max, Google Nest Hub, and Google Nest Hub Max and other Google Assistant-enabled devices (hereinafter, the **"Google Home/Nest Devices"**).

69.     Google has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the

Google Assistant Devices and by making, using, testing, operating, selling, and/or offering for sale a communications system that supports Google Home/Nest Devices (*e.g.*, the Google Cloud Platform).

70.     Google's customers have infringed and continue to infringe the Patents-in-Suit by using the Google Assistant Devices purchased from Google. Through its product manuals and/or sales and marketing activities, Google solicits, instructs, encourages, and aids and abets its customers to purchase and use the Google Assistant Devices in an infringing way.

71.     Google has knowledge of the Patents-in-Suit at least as of the filing of this lawsuit.

72.     Google's ongoing actions are with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

73.     Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Google's specific intent and/or willful blindness with respect to infringement.

74.     HDI has been and continues to be damaged as a result of Google's infringing conduct. Google is therefore liable to HDI in an amount that adequately compensates HDI for Google's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

75.     Google markets and sells other products that are not covered by the claims of the Patents-in-Suit but that are sold with or in conjunction with the Google Assistant Devices. Accordingly, HDI is entitled to collect damages from Google for convoyed sales of certain non-patented items.

76.     Google failed to obtain permission from HDI to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit.

77.     Attached to this Complaint are **Exhibits 17–35**, which are exhibits supporting the sample claim charts **Exhibits 9–16**) and are incorporated by reference herein and in the claim charts. Certain exhibits (*e.g.*, **Exhibits 17, 22, 23, 25, 28**) are video files. The video file exhibits filed with this complaint include URLs for the cited videos, which are incorporated by reference herein and in the claim charts. Copies of the video exhibits will be provided with service of this Complaint.

78.     For each count of infringement listed below, HDI incorporates and re-states the allegations contained in the preceding paragraphs above including these General Allegations as if fully set forth in each count of infringement.


## COUNT I – INFRINGEMENT OF THE '483 PATENT

79.     HDI incorporates herein the allegations made in paragraphs 1–78.

80.     Google has been and is now directly infringing the '483 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in at least Claims 10, 12, 14, 15, 16, 17, 18, 22, 24, 25, and/or 28 of the '483 Patent.

81.     Google makes, uses, sells, offers to sell, and/or imports a communication system capable of enabling one or more communication devices to remotely execute one or more applications. This communication system infringes at least Claims 10, 12, 14, 15, 16, 17, and/or 18 of the '483 Patent.

82.     Additionally, by supporting, developing, implementing, and/or otherwise providing the Google Cloud Platform, Google has practiced a method for enabling one or more

communication devices to remotely execute one or more applications. This method infringes at least Claims 22, 24, 25, and/or 28 of the '483 Patent.

83.     For example, the Google Home/Nest Devices operate on a communication system including Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Assistant SDK, Google Cloud Functions, Google Cloud Storage, and other supporting Google Cloud Platform (GCP) elements to allow the Google Home/Nest Devices to remotely execute one or more Google Assistant applications (*e.g.*, actions for the Google Home/Nest Devices).

84.     Additionally, Google is indirectly infringing the '483 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud Platform in a way that directly infringes at least Claims 10, 12, 14, 15, 16, 17, 18, 22, 24, 25, and/or 28 of the '483 Patent.

85.     Google has had actual knowledge of the '483 Patent at least since the filing of this lawsuit.

86.     Google's ongoing actions represent a specific intent to induce infringement of at least Claims 10, 12, 14, 15, 16, 17, 18, 22, 24, 25, and/or 28 of the '483 Patent.

87.     An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '483 Patent is attached as **Exhibit 9** and incorporated herein by reference.

88.     As a result of Google's infringement of the '483 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '011 PATENT

89.     HDI incorporates herein the allegations made in paragraphs 1–88.

90.     Google has been and is now directly infringing the '011 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in at least Claims 11, 16, 17, and/or 23 of the '011 Patent.

91.     Google makes, uses, sells, offers to sell, and/or imports a non-transitory computer readable storage medium having stored thereon a computer-executable application software program that, when executed on a communication system, enables one or more communication devices to remotely execute and to provide services to an application.

92.     For example, the Google Home/Nest Devices operate on a communication system including Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Assistant SDK, Google Cloud Functions, Google Cloud Storage, and other supporting Google Cloud Platform (GCP) elements to allow the Google Home/Nest Devices to remotely execute one or more Google Assistant applications (*e.g.*, actions for the Google Home/Nest Devices).  The application software program (*e.g.*, Google software) causes the one or more application servers to perform the method of at least Claims 11, 16, 17, and/or 23 of the '011 Patent.

93.     Additionally, Google is indirectly infringing the '011 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud Platform in a way that directly infringes at least Claims 11, 16, 17, and/or 23 of the '011 Patent.

94.     Google has had actual knowledge of the '011 Patent at least since the filing of this lawsuit.

95.     An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '011 Patent is attached as **Exhibit 10** and incorporated herein by reference.

96.     As a result of Google's infringement of the '011 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.


## COUNT III – INFRINGEMENT OF THE '040 PATENT

97.     HDI incorporates herein the allegations made in paragraphs 1–96.

98.     Google has been and is now directly infringing the '040 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claims 1, 3, 4, 5, 11, 12, and/or 13 of the '040 Patent.

99.     Google makes, uses, sells, offers to sell, and/or imports a communication system capable of enabling one or more communication devices to remotely execute one or more applications. This communication system infringes at least Claims 1, 3, 4, 5, 11, 12, and/or 13 of the '040 Patent.

100.    For example, the Google Home/Nest Devices operate on a communication system including Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Assistant SDK, Google Cloud Functions, Google Cloud Storage, and other supporting Google Cloud Platform (GCP) elements to allow the Google Home/Nest Devices to remotely execute one or more Google Assistant applications (*e.g.*, actions for the Google Home/Nest Devices).

101.    Additionally, Google is indirectly infringing the '040 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing them how to use the Google Home/Nest Devices and/or the Google Cloud Platform in a way that directly infringes at least Claims 1, 3, 4, 5, 11, 12, and/or 13 of the '040 Patent.

102.    Google has had actual knowledge of the '040 Patent at least since the filing of this lawsuit.

103.    An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '040 Patent is attached as **Exhibit 11** and incorporated herein by reference.

104.    As a result of Google's infringement of the '040 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.


## COUNT IV – INFRINGEMENT OF THE '937 PATENT

105.    HDI incorporates herein the allegations made in paragraphs 1–104.

106.    Google has been and is now directly infringing the '937 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claims 1, 3, 8, 10, 11, 14, 17, and/or 24 of the '937 Patent.

107.    Google makes, uses, sells, offers to sell, and/or imports a communication device that infringes at least Claims 1, 3, 8, 10, 11, 14, 17, and/or 24 of the '937 Patent.

108.    For example, the Google Home/Nest Devices are communication devices made, used, sold, offered for sale and/or imported by Google.

109.    Additionally, Google is indirectly infringing the '937 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud

Platform in a way that directly infringes at least Claims 1, 3, 8, 10, 11, 14, 17, and/or 24 of the '937 Patent.

110.    Google has had actual knowledge of the '937 Patent at least since the filing of this lawsuit.

111.    An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '937 Patent is attached as **Exhibit 12** and incorporated herein by reference.

112.    As a result of Google's infringement of the '937 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.


## <u>COUNT V – INFRINGEMENT OF THE '732 PATENT</u>

113.    HDI incorporates herein the allegations made in paragraphs 1–112.

114.    Google has been and is now directly infringing the '732 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claims 1, 4, and/or 5 of the '732 Patent.

115.    Google makes, uses, sells, offers to sell, and/or imports one or more application servers (*e.g.*, the server(s) used in conjunction with Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Cloud Functions, or Google Cloud Storage; and/or Google Cloud Platform (GCP) servers for actions for the Google Home/Nest Devices) that infringe at least Claims 1, 4, and/or 5 of the '732 Patent.

116.    Additionally, Google is indirectly infringing the '732 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or

by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud Platfirm in a way that directly infringes at least Claims 1, 4, and/or 5 of the '732 Patent.

117.   Google has had actual knowledge of the '732 Patent at least since the filing of this lawsuit.

118.   An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '732 Patent is attached as **Exhibit 13** and incorporated herein by reference.

119.   As a result of Google's infringement of the '732 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

### COUNT VI – INFRINGEMENT OF THE '935 PATENT

120.   HDI incorporates herein the allegations made in paragraphs 1–119.

121.   Google has been and is now directly infringing the '935 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 21, and/or 23 of the '935 Patent.

122.   Google makes, uses, sells, offers to sell, and/or imports a communication system capable of enabling at least one communication device to remotely execute one or more applications. This communication system infringes at least Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 21, and/or 23 of the '935 Patent.

123.   For example, the Google Home/Nest Devices operate on a communication system including Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Assistant SDK, Google Cloud Functions, Google Cloud Storage, and other supporting Google Cloud Platform (GCP) elements to allow the

Google Home/Nest Devices to remotely execute one or more Google Assistant applications (*e.g.*, actions for the Google Home/Nest Devices).

124.     Additionally, Google is indirectly infringing the '935 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or Google Cloud Platfirm in a way that directly infringes at least Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 21, and/or 23 of the '935 Patent.

125.     Google has had actual knowledge of the '935 Patent at least since the filing of this lawsuit.

126.     An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '935 Patent is attached as **Exhibit 14** and incorporated herein by reference.

127.     As a result of Google's infringement of the '935 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.


## COUNT VII – INFRINGEMENT OF THE '032 PATENT

128.     HDI incorporates herein the allegations made in paragraphs 1–127.

129.     Google has been and is now directly infringing the '032 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 22, and/or 23 of the '032 Patent.

130.     Google makes, uses, sells, offers to sell, and/or imports a communication device that infringes at least Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and/or 15 of the '032 Patent.

131.    Google makes, uses, sells, offers to sell, and/or imports a client device that infringes at least Claims 16, 20, 21, 22, and/or 23 of the '032 Patent.

132.    For example, the Google Home/Nest Devices are communication devices made, used, sold, offered for sale and/or imported by Google.

133.    Additionally, Google is indirectly infringing the '032 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud Platform in a way that directly infringes at least Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 22, and/or 23 of the '032 Patent.

134.    Google has had actual knowledge of the '032 Patent at least since the filing of this lawsuit.

135.    An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '032 Patent is attached as **Exhibit 15** and incorporated herein by reference.

136.    As a result of Google's infringement of the '032 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.


## COUNT VIII – INFRINGEMENT OF THE '816 PATENT

137.    HDI incorporates herein the allegations made in paragraphs 1–136.

138.    Google has been and is now directly infringing the '816 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in at least Claims 1, 6, 7, 8, 9, 10, 11, 12, 14, 15, 18, 19, 20, 24, 25, 27, 28, and/or 29 of the '816 Patent.

139.    Google makes, uses, sells, offers to sell, and/or imports a communication system that infringes at least Claims 1, 6, 7, 8, 9, 10, 11, 12, 14, 15, 18, and/or 19 of the '816 Patent.

140.    Google makes, uses, sells, offers to sell, and/or imports an interactive, voice-based communication system that infringes at least Claims 20, 24, 25, 27, and/or 28 of the '816 Patent.

141.    Google practices a method of providing responses in an interactive, voice-based communication system that infringes at least Claim 29 of the '816 Patent.

142.    For example, the Google Home/Nest Devices operate on a communication system including Google Cloud speech-to-text featuring Automatic Speech Recognition (ASR), Google Cloud natural language understanding (NLU), Google Assistant SDK, Google Cloud Functions, Google Cloud Storage, and other supporting Google Cloud Platform (GCP) elements to allow the Google Home/Nest Devices to remotely execute one or more Google Assistant applications (*e.g.*, actions for the Google Home/Nest Devices).

143.    Additionally, Google is indirectly infringing the '816 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Google Home/Nest Devices and/or by instructing customers how to use the Google Home/Nest Devices and/or the Google Cloud Platform in a way that directly infringes at least Claims 1, 6, 7, 8, 9, 10, 11, 12, 14, 15, 18, 19, 20, 24, 25, 27, 28, and/or 29 of the '816 Patent.

144.    Google has had actual knowledge of the '816 Patent at least since the filing of this lawsuit.

145.    An exemplary claim chart comparing Google's infringing systems/methods to one or more claims of the '816 Patent is attached as **Exhibit 16** and incorporated herein by reference.

146.   As a result of Google's infringement of the '816 Patent, HDI has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## DEMAND FOR A JURY TRIAL

147.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HDI demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

148.   WHEREFORE, HDI respectfully requests that this Court enter judgment in its favor and grant the following relief:

149.   A judgment that Google has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

150.   A judgment and order requiring Google to pay HDI past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

151.   A judgment and order requiring Google to pay HDI reasonable ongoing royalties on a going-forward basis after final judgment;

152.   A judgment and order requiring Google to pay HDI pre-judgment and post-judgment interest on the damages award;

153.   A judgment and order requiring Google to pay HDI's costs; and

154.   Such other and further relief as the Court may deem just and proper.

Dated: June 6, 2019

Respectfully submitted,

_____
**ERIC M. ALBRITTON**
STATE BAR NO. 00790215
**BRENT N. BUMGARDNER**
STATE BAR NO. 00795272
**ANDREW J. WRIGHT**
STATE BAR NO. 24063927
**NELSON BUMGARDNER ALBRITTON PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111 (telephone)
903.758.7397 (facsimile)
ema@nbafirm.com
brent@nbafirm.com
andrew@nbafirm.com

**JOSEPH P. OLDAKER**
ILLINOIS BAR NO. 6295319
    (*pro hac vice application to be filed*)
**NELSON BUMGARDNER ALBRITTON PC**
15020 S. Ravinia Avenue, Suite 29
Orland Park, Illinois 60462
708.675.1583 (telephone)
joseph@nbafirm.com

**COUNSEL FOR PLAINTIFF
HAMMOND DEVELOPMENT
INTERNATIONAL, INC.**