**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| HAMMOND DEVELOPMENT INTERNATIONAL, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION No. 6:19-cv-00356-ADA |
| GOOGLE LLC | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

## DEFENDANT GOOGLE LLC'S RULE 12(B)(6) MOTION TO DISMISS UNDER 35 U.S.C. § 101

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    BACKGROUND .......................................................................................... 1

    A.    The Asserted Patents And Claims.......................................................... 1

    B.    Representative Claims: '483 Patent Claim 10 and '816 Patent Claim 1 .............. 3

III.    LEGAL STANDARD................................................................................... 5

IV.    ARGUMENT .............................................................................................. 5

    A.    Step One: The Asserted Claims Are Directed To An Abstract Idea..................... 5

        1.    The Asserted Claims Are Directed To Using Network Communication To Collect Information From And Present Information To Users ................................................................ 6

        2.    The Asserted Claims Are Directed To Common Everyday Human Interactions That Predate the Internet ........................................ 9

        3.    Using Network Communication To Collect Information From And Present Information To Users Is An Abstract Idea Under Federal Circuit Precedent.................................................................. 10

        4.    The Asserted Claims Do Not Recite Any Improvements To Computer Capabilities ................................................................ 13

    B.    Step Two: The Asserted Claims Do Not Disclose Any Inventive Concepts....... 15

        1.    The Claims Invoke Generic Computing Components ............................ 16

        2.    The Addition of Voice Elements in The '816 And '032 Patents' Asserted Claims Does Not Supply An Inventive Concept ..................... 18

    C.    No Factual Disputes Preclude Dismissal ............................................. 19

V.    CONCLUSION......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ............................................. 20

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ............................................. 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ............................................. 5, 15

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ............................................. 8, 19

*Blackbird Tech LLC v. Advanced Discovery Inc.*,
    No. CV 16-413-GMS, 2017 WL 2734725 (D. Del. June 26, 2017) ........................................ 13

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................. 18

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ............................................. 12, 16

*Content Aggregation Sols. LLC v. Blu Prod., Inc.*,
    No. 316-CV-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) ..................... 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................. 13

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ............................................. 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................. 6

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) ............................................. 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................. 10, 13, 17

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................. 6, 13

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016) ............................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ........................................................................ 20

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ............................................................................... 9

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ...................................................................... 15, 16

*Internet Patents Corp. v. Active Network, Inc*,
  790 F.3d 1343 (Fed. Cir. 2015) ............................................................................ 13

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ............................................................................ 14

*Landmark Tech., LLC v. Assurant, Inc.*,
  Case No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311 (E.D. Tex. July 14, 2015) ................. 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ......................................................................................... 16

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ............................................................................ 13

*Parus Holdings, Inc. v. Sallie Mae Bank*,
  137 F. Supp. 3d 660 (D. Del. 2015), *aff'd*, 677 F. App'x 682 (Fed. Cir. 2017) ............ 9, 12, 19

*SAP America, Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ................................................................ 13, 14, 17

*Trading Techs. Int'l, Inc. v. IBG, LLC*,
  921 F.3d 1084 (Fed. Cir. 2019) ............................................................................ 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) ................................ 16, 19

*Voit Technologies, LLC v. Del-Ton, Inc.*,
  757 F. App'x 1000 (Fed. Cir. 2019) ............................................................... 14, 20

*West View Research LLC v. Audi AG*,
  685 F. App'x 923 (Fed. Cir. 2017) ................................................................. 11, 19

**Statutes**

35 U.S.C. § 101 ................................................................................................ 1, 5, 21

## I.      <u>INTRODUCTION</u>

This Court should dismiss Plaintiff Hammond Development International, Inc.'s ("HDI") Complaint because all asserted claims of the eight related, asserted patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101.  At *Alice* step one, all of the asserted claims are directed to the abstract idea of using network communication to collect information from and present information to users.  The Federal Circuit has repeatedly rejected as abstract such claims as they fall into a common class of claims directed to storing, analyzing, and presenting information over a network.  And far from claiming any technological improvement, HDI's asserted claims merely invoke generic "devices," "servers," or "connections" on a generic network to implement this abstract idea.

At *Alice* step two, the asserted claims do not recite any inventive concept or useful application to transform the patents into patentable subject matter.  Rather, the claims are results-oriented, invoking a generic computer network environment—"communication devices" and "application servers" that form generic "communication link[s]" and "data connection[s]"—to implement the abstract idea of network communication to collect information from and present information to users.  Because the asserted claims are directed to an abstract idea while disclosing no inventive concept, they are invalid under 35 U.S.C. § 101.

## II.     <u>BACKGROUND</u>

### A.      <u>The Asserted Patents And Claims</u>

HDI alleges infringement of 84 claims of eight patents: U.S. Patent Nos. 9,264,483 ('483 Patent) (Dkt. 1-2), 9,420,011 ('011 Patent) (Dkt. 1-3), 9,456,040 ('040 Patent) (Dkt. 1-4), 9,705,937 ('937 Patent) (Dkt. 1-5), 9,716,732 ('732 Patent) (Dkt. 1-6), 10,193,935 ('935 Patent) (Dkt. 1-7), 10,264,032 ('032 Patent) (Dkt. 1-8), and 10,270,816 ('816 Patent) (Dkt. 1-9)

(collectively, "Asserted Patents").  Dkt. 1.[1]  All eight patents are in the same patent family, share a common specification, and are titled "Method and system for enabling a communication device to remotely execute an application."

The common specification describes a system, depicted in Figure 1C below, where a user's "communication device" 18 exchanges information with an "application server" 24 through a network.  '483 Patent at Abstract.  The "communication device" 18 requests to set up a communication session with the "application server" 24, which executes an "application" 28 to send requests back to the "communication device" 18.  *Id*.  The "application server" 24 communicates with a separate server, called a "repository" 20, which has access to databases 22 that store the software needed to run the "application" 28."  *Id*.  Thus, to communicate with the user, the application server 24 requests and receives the "application" 28 software from the "repository" 20.  *Id*.  The application server 24 then executes the application 28 in order to communicate queries to the user's device 18.  *Id*.



FIG. 1C

---

[1] The Complaint asserts: claims 10, 12, 14, 15, 16, 17, 18, 22, 24, 25, 28 of the '483 Patent; claims 11, 16, 17, 23 of the '011 Patent; claims 1, 3, 4, 5, 11, 12, 13 of the '040 Patent; claims 1, 3, 8, 10, 11, 14, 17, 24 of the '937 Patent; claims 1, 4, 5 of the '732 Patent; claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 21, 23 of the '935 Patent; claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 22, 23 of the '032 Patent; and claims 1, 6, 7, 8, 9, 10, 11, 12, 14, 15, 18, 19, 20, 24, 25, 27, 28, 29 of the '816 Patent (collectively, the "Asserted Claims").

All of the computing devices and elements that make up the claimed system are generic and conventional.  The network is generic and "may comprise any wireless network, wireline network, or combination of wireless and wireline networks."  *Id.* at 3:41–47.  The "communication device" is any device that enables "communication of information to and/or from [the] network."  *Id.* at 3:56–58.  And the "application server" is a generic computer "capable of performing a desired communicating and/or computing functionality, such as, for example, accessing, retrieving, and/or executing one or more system applications."  *Id.* at 3:12–16.  The repository is a generic computer server that is "capable of performing a desired communicating and/or computing functionality," and the databases "include any hardware, software, firmware, or combination thereof operable to store and facilitate retrieval of one or more applications [] and/or information."  *Id.* at 4:12–14, 4:41–43.  The "application" is any "functionality that is capable of facilitating the ability to collect information from and/or present information to one or more clients [] or users."  *Id.* at 4:24–28.

B.      **Representative Claims: '483 Patent Claim 10 and '816 Patent Claim 1**

Independent claim 10 of the '483 Patent ("Claim 10") is representative of the asserted claims of the '483, '011, '040, '937, '732, and '935 Patents.  HDI treats it as representative: HDI charted it as an exemplary claim of the '483 Patent.  *See* Dkt. 1-10.  Claim 10 recites the "communication device," "application server," "repository," and "application" elements discussed above:

> 10. A communication system capable of enabling one or more communication devices to remotely execute one or more applications, comprising:
>
> one or more application servers coupled to a first communication link, the first communication link comprising a data connection, at least one of the one or more application servers adapted to execute an application to establish a communication session with at least one communication device coupled to the data connection in response to a request from the at least one communication device to establish the communication session, the at least one application

> server residing at a location remote from the at least one communication device;
>
> wherein the at least one application server is operable to receive over a second communication link an application from a repository having access to one or more applications maintained in a database coupled to the at least one repository,
>
> wherein the at least one application server is further operable to execute the received application remote from the at least one communication device and to establish the communication session with the at least one communication device,
>
> wherein the at least one application server is operable to communicate a request for processing service to the at least one communication device, and
>
> wherein the request for processing service is communicated to the at least one communication device over the data connection, and wherein the request for processing service comprises one or more queries for information from a user.

Dkt. 1-2, cl. 10.  Claim 10 is representative because (1) it encompasses all elements in the asserted independent claims of the '483, '011, '040, '937, '732, and '935 Patents and (2) the asserted dependent claims are not materially different for purposes of the § 101 analysis.

Claim 1 of the '816 Patent ("Claim 1") is representative of all asserted claims of the '816 and '032 Patents.  HDI also treats this claim as representative: HDI charted it as an exemplary claim for the '816 Patent.  *See* Dkt. 1-17.  The asserted claims of the '816 and '032 Patents, are similar to the claims of the '483 Patent, but add that the collection and presentation of information is done using "voice" and the application server comprises a "voice processing software program."  Representative Claim 1 of the '816 Patent (Dkt. 1-9, cl. 1) recites:

> 1. A communication system comprising:
>
> an application server coupled to a first communication link and coupled to a second communication link, the first communication link and the second communication link each comprising a data connection,
>
> the application server adapted to establish a communication session with at least one communication device coupled to the first communication link in response to a request from the at least one communication device to establish the communication session,

wherein the application server comprises a voice processing software program and the request from the at least one communication device comprises packetized voice data;

a repository having access to an application comprising at least a portion of computer code;

wherein the application server is either (a) configured to receive the application via the second communication link, or (b) configured to cause an execution of the application via the second communication link;

wherein the application server is configured to execute or cause the execution of the application remote from the at least one communication device;

wherein the voice processing software program is configured to generate a voice representation of information derived from the application;

wherein the application server is configured to transmit the voice representation and a request for processing service over the first communication link to the at least one communication device; and

wherein the request for processing service comprises an instruction to present a user of the at least one communication device the voice representation.

## III.   LEGAL STANDARD

To assess whether a patent claims ineligible subject matter under § 101, courts apply the two-step test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  Under that test, courts look to (1) whether the claims are directed to an abstract idea; and, if so, (2) whether the claims recite an inventive concept that transforms the abstract idea into a patent eligible application.  *Id*. at 2355.  Patent eligibility under 35 U.S.C. § 101 under *Alice* is properly resolved as a matter of law on a Rule 12(b)(6) motion in many cases.  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016).

## IV.   ARGUMENT

### A.   Step One: The Asserted Claims Are Directed To An Abstract Idea

At *Alice* step one, the Court must determine the central "focus" or "character" of the Asserted Claims and assess whether that "focus" or "character" is an abstract idea.  *Affinity Labs*

*of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257–58 (Fed. Cir. 2016).  To determine whether an idea is abstract, courts often consider whether there are brick-and-mortar or pre-Internet analogs to the claimed idea, which would demonstrate the abstract nature of the idea. *See, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).  Courts will also compare the idea and the "claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  Finally, courts consider whether the claimed invention is directed to improvements to computer technologies.  *Id.* at 1336.

The focus of the Asserted Claims is using network communication to collect information from and present information to users—an idea that courts have repeatedly rejected as abstract. Indeed, the specification itself describes pre-Internet analogs to the claimed system, confirming that the claims are directed to an abstract idea.  And the claims do not disclose any improvements to computing technology but instead invoke generic, well-known computing devices merely as tools to implement the abstract idea.  The Asserted Claims thus fail *Alice* step one.

1. **The Asserted Claims Are Directed To Using Network Communication To Collect Information From And Present Information To Users**

All of the Asserted Claims are directed to the abstract idea of using network communication to collect information from and present information to users.  As the table below summarizing the limitations shows, the components and functions of representative Claim 10 amount to nothing more than an "application server" that: (1) establishes a communication session with a user; (2) receives and executes an application from a separate repository database; and (3) communicates a query for information to the user.  The first two steps, establishing a communication session and receiving and executing an application, are merely preparatory steps for achieving the ultimate goal of the claimed system—communicating a query for information

to the user.  The central focus of Claim 10 is thus a server that collects information or a request

from a database and relays it to a user—in other words, using network communication to collect

information from and present information to a user.

| '483 Patent Claim 10 | Summary Of Limitations |
|---|---|
| 10. A communication system capable of enabling one or more communication devices to remotely execute one or more applications, comprising: | |
| one or more application servers coupled to a first communication link, the first communication link comprising a data connection, at least one of the one or more application servers adapted to execute an application to establish a communication session with at least one communication device coupled to the data connection in response to a request from the at least one communication device to establish the communication session, the at least one application server residing at a location remote from the at least one communication device; | Application server establishes communication session with communication device |
| wherein the at least one application server is operable to receive over a second communication link an application from a repository having access to one or more applications maintained in a database coupled to the at least one repository, | Application server receives and executes an application from a repository |
| wherein the at least one application server is further operable to execute the received application remote from the at least one communication device and to establish the communication session with the at least one communication device, | |
| wherein the at least one application server is operable to communicate a request for processing service to the at least one communication device, and | The application server executes the application to communicate a query for information to the communication device |
| wherein the request for processing service is communicated to the at least one communication device over the data connection, and | |
| wherein the request for processing service comprises one or more queries for information from a user. | |

Representative Claim 1 of the '816 Patent is similar and adds only that the system accepts

voice input and likewise provides voice output to the user.  As summarized in the table below,

the recited components and functions of Claim 1 amount to nothing more than an "application

server" that: (1) establishes a communication session with a user; (2) receives a voice request

from the user; (3) receives an application from a repository and executes it to generate

information in a voice format; and (4) sends the voice information to the user. That Claim 1's communication device captures voice input and outputs a voice-formatted response only changes the format of the information—it does not change that the claim is still directed to network communication to collect information from and present information to users. *See, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016) (finding that "voice capture technologies" constituted insignificant post-solution activity).

| **'816 Patent Claim 1** | **Summary Of Limitations** |
|---|---|
| 1. A communication system comprising: | |
| an application server coupled to a first communication link and coupled to a second communication link, the first communication link and the second communication link each comprising a data connection, | Application server establishes communication session with communication device |
| the application server adapted to establish a communication session with at least one communication device coupled to the first communication link in response to a request from the at least one communication device to establish the communication session, | |
| wherein the application server comprises a voice processing software program and the request from the at least one communication device comprises packetized voice data; | Application server receives a voice request from a communication device |
| a repository having access to an application comprising at least a portion of computer code; wherein the application server is either (a) configured to receive the application via the second communication link, or (b) configured to cause an execution of the application via the second communication link; | Application server receives an application from a repository and executes it to generate information in a voice format |
| wherein the application server is configured to execute or cause the execution of the application remote from the at least one communication device; | |
| wherein the voice processing software program is configured to generate a voice representation of information derived from the application; | |
| wherein the application server is configured to transmit the voice representation and a request for processing service over the first communication link to the at least one communication device; and wherein the request for processing service comprises an instruction to present a user of the at least one communication device the voice representation. | The application server sends the voice information to the communication device |

The Asserted Patents' common specification confirms that the Asserted Claims are directed to using network communication to collect information from and present information to users.  The title, "Method and system for enabling a communication device to remotely execute an application," describes communication devices that are remotely connecting and communicating, i.e., communicating on a network.  The figures disclose generic communication devices establishing communication links on a network to execute "applications."  *See, e.g.*, '483 Patent at FIG. 1B.  The specification, in turn, defines "application" generically as "functionality that is capable of facilitating the ability to collect information from and/or present information to one or more clients [] or users of system."  *Id*. at 4:24–28.  Other portions of the specification similarly depict and describe a system where a user of a communication device communicates a request or data to an application server on a network.  *See, e.g.*, *id.* at 5:59–62, FIG. 1A.  The specification thus confirms that the claimed invention's focus is nothing more than using network communication to collect information from and present information to users.

2.      **The Asserted Claims Are Directed To Common Everyday Human Interactions That Predate the Internet**

In *Parus Holdings, Inc. v. Sallie Mae Bank*, when faced with claims that appeared "Internet-centric," the court found "the fact that there are pre-Internet analogs to the patent claims suggests" the claims were directed to "methods of organizing human (business) activity and, therefore, an abstract idea."  137 F. Supp. 3d 660, 672 (D. Del. 2015) (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015)), *aff'd*, 677 F. App'x 682 (Fed. Cir. 2017).  Here, the Asserted Claims appear Internet-centric because they utilize a computer network, but they are in fact directed to basic human interactions.  Indeed, the shared specification discloses an embodiment that carries out the common human interaction of checking bank account balances, which was performed long before the advent of the Internet.

*See* '483 Patent at 8:32–9:45.  As shown in the table below, the disclosed embodiment maps

directly to a person asking a bank teller for the person's bank account balance:

| Pre-Internet Interaction | Embodiment Described in Asserted Patents |
|---|---|
| A person initiates a conversation with a bank teller to request the person's bank account balance. | A user uses a communication device to send a request to an application server, and a communication session is established.  '483 Patent at 8:42–44, 8:57–58 |
| The bank teller checks with the bank's records department and retrieves records that include account balances for customers, sorted by account numbers. | The application server notifies the repository of the request and retrieves the appropriate application from the database.  *Id.* at 8:46–49, 9:6–8. |
| The teller asks for the user's account number. | The application is executed and queries the user for information.  *Id.* at 8:58–65, 9:8–10. |
| The person tells the bank teller the account number. | The user inputs the account number into the communication device.  *Id.* at 9:17–22. |
| The bank teller looks up the account balance. | The application server executes the application to retrieve the account balance.  *Id.* at 9:25–31. |
| And the bank teller tells the person the account balance. | The application server sends the account balance information to the communication device for presentation to the user.  *Id.* at 9:35–45. |

The specification's own application of its claimed invention to a simple bank teller

transaction confirms that the Asserted Claims are directed to activities that humans performed

before the advent of the Internet and are therefore abstract.

### 3.   Using Network Communication To Collect Information From And Present Information To Users Is An Abstract Idea Under Federal Circuit Precedent

The claimed idea of using network communication to collect information from and

present information to users falls squarely within a category of patents directed to collecting,

sending, analyzing, storing and presenting information that the Federal Circuit has routinely

found invalid.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed.

Cir. 2016) (collecting cases).  Indeed, the Federal Circuit has rejected as abstract claims

specifically directed to concepts of using networks, servers, and databases to receive, send, and present data to a user, including when that data is in the form of voice or speech.

For example, in *West View Research LLC v. Audi AG*, the Federal Circuit invalidated 81 claims from seven patents directed to nearly the same alleged inventions as in this case.  685 F. App'x 923, 924 & n.1 (Fed. Cir. 2017).  There, the claims at issue recited a system that received user voice input, processed the voice input, and provided a voice-formatted response back to the user.  *Id.* at 924–26; U.S. Pat. No. 8,719,038, cl. 63 and U.S. Pat. No. 8,065,156, cl. 29 (patents and claims invalidated in *West View*).  As one example, claim 63 of U.S. Pat. No. 8,719,038 recited:  (1) "establishment of an ad-hoc or temporary communication link with a portable personal electronic device of the user"; (2) a "computer program . . . configured to engage the user in an interactive audible interchange;"; (3) "digitization of the user's speech received via the microphone"; and (4) "causation of generation of an audible communication to the user via the speech synthesis apparatus."  The Federal Circuit found that the claims did not "go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query."  *West View*, 685 F. App'x at 926.  Thus, the claims fell into the common class of abstract claims directed to "[c]ollecting information, analyzing it, and displaying certain results of the collection and analysis."  *Id.* (citation omitted).

*West View*'s reasoning applies directly here.  For example, representative Claim 1 of the '816 Patent recites analogous elements of: (1) establishing a communication session with a user; (2) receiving a voice request from the user; (3) receiving an application from a repository and executes it to generate information in a voice format; and (4) sending the voice information to the user.  Like the rejected claims in *West View*, the elements recited in HDI's claims do not go

beyond collecting data queries, analyzing them, retrieving and processing information constituting a response, and presenting an audio or visual response to the initial query.

In *Parus Holdings*, the Federal Circuit affirmed rejection of claims directed to "computer and telecommunications network for receiving, sending and managing information from a subscriber to the network and from the network to a subscriber" as invalid under § 101.  137 F. Supp. 3d at 672.  Like the Asserted Claims, the claims in *Parus Holdings* recited receiving voice input and using speech recognition to send, receive, and manage voice information in a network. *Id.*  There, too, the system utilized a network comprised of remote servers connected by generic communication links like telephone connections and the Internet.  *Id.* at 671–72.  *Parus Holdings* confirms that using network communication to collect information from and present information to users, even with the additional recitation of voice-related components, is an abstract idea.  *Id.*

More recently, in *ChargePoint, Inc. v. SemaConnect, Inc.*, the Federal Circuit specifically held that "network communication for device interaction" is an abstract idea.  920 F.3d 759, 770, 775 (Fed. Cir. 2019).  The patents in *ChargePoint* claimed an apparatus controlled by a remote server, where the server controls whether electricity is flowing to charge an electric vehicle.  *Id.* at 764.  The Federal Circuit found the claims recited "the abstract idea of communicating requests to a remote server and receiving communications from that server."  *Id.* at 766.  The Federal Circuit also remarked that the claims were drafted in a "result-oriented" way that "would cover any mechanism for implementing network communication on a charging station."  *Id.* at 769–70.  The Asserted Claims here are similarly drafted in a "result-oriented" way to cover any mechanism of using network communication for the purpose of collecting information from and presenting information to users.  The Asserted Claims, for example, recite only functional elements, such as a "server," "communication device," "communication link" and "application,"

without any specificity about the features of those elements or how those generic elements

achieve the recited goals of collecting or presenting information, or converting that information

to and from a voice format.

For the same reasons the claims in *West View*, *Parus Holdings*, and *ChargePoint* were

found abstract, the Asserted Claims here are abstract.[2]

### 4. The Asserted Claims Do Not Recite Any Improvements To Computer Capabilities

The Asserted Claims also fail to recite any technological improvement to computer

capabilities and are therefore abstract under the *Enfish* test for patentability at step one.  In

*Enfish*, the Federal Circuit explained that at step one, courts should consider "whether the focus

of the claims is on the specific asserted improvement in computer capabilities," or whether the

claims simply invoke computers as a tool.  822 F.3d at 1335–36.  One way to identify if

computers are being invoked as a tool is to see if the claims "simply add[] conventional

computer components" to the abstract idea.  *Id.* at 1338.  Under *Enfish*, "claiming only a result"

executed by generic computers rather than specifically "claiming a way of achieving it" is

insufficient.  *See SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

Thus, the inquiry considers whether claims recite use of generic computers merely for

---

[2] *West View*, *Parus Holdings*, and *ChargePoint* are just a few examples from a large pool of §
101 cases holding that patent claims directed to collecting, sending, receiving, analyzing, and
presenting information are invalid.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d
1350, 1353–54 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343,
1349 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363–64 (Fed. Cir.
2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d
1343, 1347–48 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758
F.3d 1344, 1351 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366,
1370–71 (Fed. Cir. 2011); *Landmark Tech., LLC v. Assurant, Inc.*, Case No. 6:15-CV-76-RWS-
JDL, 2015 WL 4388311, at *4–5 (E.D. Tex. July 14, 2015); *Content Aggregation Sols. LLC v.
Blu Prod., Inc.*, No. 316-CV-00527-BEN-KSC, 2016 WL 6995490, at *5 (S.D. Cal. Nov. 29,
2016); *Blackbird Tech LLC v. Advanced Discovery Inc.*, No. CV 16-413-GMS, 2017 WL
2734725, at *4–5 (D. Del. June 26, 2017).

"production of a desired result" or instead recite specific limitations regarding "how to produce that result."  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018).

The Federal Circuit has established that recitations of generic computer components or computer functions in a result-oriented manner is insufficient to pass the *Enfish* test.  For example, in *Voit Technologies, LLC v. Del-Ton, Inc.*, the Federal Circuit considered a claimed process of entering text and image information into a computer, compressing the image data, creating unique records of the data to send and store it separately, and decompressing the data at the computer to display the image.  757 F. App'x 1000, 1002 (Fed. Cir. 2019).  The patentee argued that the claims recited improved computing functions such as novel data compression formats and communicating data through an intermediary server.  *Id*. at 1003.  The Federal Circuit rejected these arguments because "the specification demonstrates that the Asserted Claims are directed to use of generic computer components" and that the claimed data compression formats were merely known, industry standard formats.  *Id.*  Likewise, in *SAP America*, the Federal Circuit found that the claims did not focus on "an improvement in computers as tools," but instead on "certain independently abstract ideas that use computers as tools."  898 F.3d at 1168.  Because "off-the-shelf computer technology [was] usable" to carry out the claims, the Federal Circuit found the claims were results-oriented and did not disclose improvements to computing systems.  *Id*.

Like the claims in *Voit* and *SAP America*, the Asserted Claims do not recite improvements to computer technologies.  The claims instead recite generic servers, communication devices, and applications that communicate information and requests across a generic network.  *See supra* Section II.A.  The shared specification confirms that the claimed computing components are not specially designed for the claimed system.  For instance, the application servers are generic

servers "capable of performing a desired communicating and/or computing functionality, such as, for example, accessing, retrieving, and/or executing one or more system applications [], or portions thereof." '483 Patent at 3:12–16.  The functions performed by the claimed computing devices also do not disclose "particular features to yield [technological] advantages." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ; *see supra* Section II.A.  Instead, the claimed functions are similarly generic actions of "communicat[ing] a request," "establish[ing] a communication session," and "receiv[ing] . . . an application."  '483 Patent, cl. 10.  The claims do not disclose *how* the generic "communication device," "application server," and "repository" are used in a specific or non-generic way that leads to improved computing systems.  Rather, the claims simply describe utilizing generic computers to perform their ordinary functions.  In other words, the claims merely invoke generic computer technologies to perform the abstract idea of network communication to collect information from and present information to users.  The Asserted Claims therefore do not recite any improvements to computing systems.

The Asserted Claims are directed to the abstract idea of using network communication to collect information from and present information to users—an idea that the Federal Circuit has consistently found abstract and the specification compares to pre-Internet activities such as posing a request to a bank teller.  And the claims disclose nothing more than utilizing generic computing devices to implement that abstract idea.  The Asserted Claims thus fail step one of the *Alice* test.

## B. Step Two: The Asserted Claims Do Not Disclose Any Inventive Concepts

The Asserted Claims fail *Alice*'s step two because they do not recite "significantly more than a patent upon the [abstract idea] itself."  *Alice*, 134 S. Ct. at 2355.  At step two, generic and conventional computing components "cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id.* at 2358.  And insignificant pre- and post-solution processing does

15

not supply an inventive concept that can transform ineligible claims.  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).  In deciding whether the claims are generic and conventional, courts can consider the patent's specification.  *ChargePoint*, 920 F.3d at 769.  But "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves."  *Id.*  Thus, specification disclosures not captured in the claims of the patents are irrelevant to the § 101 inquiry.  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018).

Here, the Asserted Claims fail to recite an inventive concept that supplies something "significantly more" to transform the patents into patentable subject matter, instead reciting only a conventional combination of generic computing components performing well-known computing functions.  The addition of voice elements to the claims in the later-issued '816 and '032 Patents also does not add an inventive concept to transform the claims.

1.      **The Claims Invoke Generic Computing Components**

The Asserted Claims recite a conventional combination of generic computer components performing routine functions and do not recite any transformative or inventive concept.  The Asserted Claims are like those in *Intellectual Ventures I LLC*, where the Federal Circuit found claims reciting "a series of generic computer 'components' that merely restate their individual functions" failed to disclose an inventive concept.  850 F.3d at 1341.  The patentee had argued that the claimed combination of "PRTs, MRTs, and a dynamic document" was inventive and would overcome "the previous problem of 'incompatibility of XML documents.'"  *Id.* at 1342.  But the Federal Circuit found the claims failed to disclose "particular features to yield these advantages." *Id.*  Instead, the claims "recite[d] no more than routine steps of data collection and organization using generic computer components and conventional data processing activities" and "provide[d] only a result-oriented solution" with "insufficient detail for how a computer accomplishes it."  *Id.*

Like the claims in *Intellectual Ventures*, every component recited in the Asserted Claims is generic and conventional as described above.  *See supra* Sections II.A and IV.A.4 (discussing claimed "communication device," "application server," "repository," "database," and "application").  The Federal Circuit has "ruled many times that 'such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea.'"  *SAP America*, 898 F.3d at 1170 (quoting *Elec. Power Grp.*, 830 F.3d at 1355).  Nothing about the combination of these computing devices is inventive either.  The claimed computing components are "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information," which cannot supply an inventive concept in step two.  *Elec. Power Grp.*, 830 F.3d at 1355.  The claimed components are generic to any communications network and to the desired result of network communication to collect information from and present information to users.  For instance, a user's "communication device" is necessary to collect information from and present information to a user.  A server (here the "application server") is necessary to receive the user's information and requests.  And because the single server does not have enough capacity to store every application and piece of information that might be requested, it must retrieve applications and information from other servers (here the "repository").

The claimed functions performed by these generic computing components are equally conventional and are recited in a results-oriented manner that fails to disclose a specific solution.  Both representative claims discuss transmission and execution of an "application," which is anything that is "capable of facilitating the ability to collect information from and/or present information to one or more clients [] or users."  '483 Patent at 4:24–28.  To transmit and execute the "application" to query the user for information, the application server of the system

(1) "establish[es] a communication session" with the communication device and the application server (2) "receive[s] . . . an application [from a repository]," and (3) "communicate[s] a request" that "comprises one or more queries for information from a user." *See* Claim 10; *cf.* Claim 1. The Federal Circuit has found these same functions conventional in numerous cases. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("receiv[ing] and send[ing] the information over a network—with no further specification—is not even arguably inventive"). Nothing in the claimed "network" of the Asserted Claims is unconventional—every component is an off-the-shelf component that performs its standard, conventional functions.

The combination of functions performed by the generic devices is also conventional and inherent to the purpose of the claim. For example, in representative Claim 10, an "application server" and "communication device" must "establish a communication session" to communicate with each other on a network. Similarly, a "communication link" is used for communications between the server and device. And to provide a response to the user, the "application server" requests and receives an "application" from a "repository" server. The final step of communicating a "query" for information to the user is necessary to provide a response to the user. Notably, the Asserted Patents' specification does not allege that these elements are inventive. And as an ordered combination, the claimed system is just a conventional network of devices that collects information from and presents information to users.

### 2. The Addition of Voice Elements in The '816 And '032 Patents' Asserted Claims Does Not Supply An Inventive Concept

Claim 1 of the '816 Patent, which is representative of the '816 and '032 Patents' asserted claims, adds that the collected information can be input by voice or presented in voice. But the mere ***format*** of input or output information does not transform the claims. *See Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (stating that "information,

including when limited to particular content" is "within the realm of abstract ideas" (citation

omitted)).  Further, voice input and output of information systems has been held by the Federal

Circuit and district courts to be abstract, conventional, and invalid under § 101.  *See, e.g.*, *West*

*View*, 685 F. App'x at 926–27; *Apple*, 842 F.3d at 1245 (finding that "voice capture

technologies" constituted insignificant post-solution activity); *Parus Holdings*, 137 F. Supp. 3d

at 671, 674.  And here, the specification even lists well-known voice communication applications

that the claimed invention adopts, including a well-known standard for voice media dialogs,

VoiceXML, and other off-the-shelf speech recognition applications.  '483 Patent at 12:12–25.

Finally, the combination of off-the-shelf components and functions in Claim 1 is inherent

to the purpose of the claim and conventional.  An "application server" and "communication

device" must "establish a communication session" to be in communication with each other on a

network.  When a device receives voice input from a user, it must process the input into

"packet[s]" before the voice data can be transferred across the network.  *See Two-Way Media*, 874

F.3d at 1338–39 (patents claiming converting streams of audio into digital packets for transfer and

routing across a network did not recite an inventive concept).  To respond to the user, the

"application server" looks for and receives a responsive "application" from a "database."  To

present information from a database to a user via the speaker of the communication device,

speech-to-text conversion must occur to "generate a voice representation" of the information.

And in the last step, the system simply presents the information to the user as requested.  None of

these elements is alleged to be inventive.  Collectively, the elements amount to a conventional

network system that transfers data to and from users.

### C.    No Factual Disputes Preclude Dismissal

HDI's Complaint fails to offer any allegations sufficient to prevent the Court from finding

the Asserted Claims invalid.  Although the Federal Circuit has held that dismissal may be improper

if a "complaint contains allegations that, taken as true . . . raise factual disputes underlying the § 101 analysis," the Federal Circuit has also held that "well-pleaded *factual* allegations are necessary to state a claim[;] mere [legal] conclusions are not entitled to the assumption of truth." *Compare Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018), *with Voit*, 757 F. App'x at 1002 (emphasis added) (marks omitted).

HDI's Complaint fails to make any *factual* allegation that could raise a factual dispute precluding Rule 12(b)(6) dismissal under *Aatrix*.  Instead, HDI's Complaint offers only the same one-sentence, legal conclusion that each Asserted Patent "claims patent-eligible subject matter under 35 U.S.C. § 101."  Dkt. No. 1 at ¶¶ 19, 25, 31, 37, 43, 49, 55, 60.  HDI does not attempt to allege any facts to support eligibility under § 101.  Indeed, HDI's conclusory assertion falls far short of pleading allegations that the Federal Circuit found insufficient in *Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 F. App'x 996 (Fed. Cir. 2018).  In rejecting the claims under § 101, the Federal Circuit stated that "[plaintiff] cannot render its complaint immune from dismissal by merely asserting that its methods are 'novel' and 'improve the technology used in electronic communications.' . . .  [t]he alleged 'factual' assertions . . . are not factual in nature, but conclusory legal assertions which the district court was 'not bound to accept as true.'"  *Id.* at 999.

Accordingly, HDI's Complaint provides no basis for denying Google's motion.  Indeed, HDI's inability to muster any factual allegations to support the patentability of the Asserted Claims only confirms that those claims should be found invalid under § 101.

## V.    <u>CONCLUSION</u>

HDI's Complaint fails to state a claim upon which relief can be granted because all of the Asserted Patents are invalid for failing to meet the threshold requirement of subject matter patentability under 35 U.S.C. § 101.  Accordingly, Google respectfully requests the Court dismiss HDI's Complaint with prejudice.

Dated:  August 19, 2019                    */s/ Steve McConnico*                

Steve McConnico
Texas State Bar No. 13450300
smcconnico@scottdoug.com
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Darin W. Snyder (*Pro Hac Vice*)
dsnyder@omm.com
Luann L Simmons (*Pro Hac Vice*)
lsimmons@omm.com
David S. Almeling (*Pro Hac Vice*)
dalmeling@omm.com
Mark Liang (*Pro Hac Vice*)
mliang@omm.com
Amy K. Liang (*Pro Hac Vice*)
aliang@omm.com
Daniel Silverman (*Pro Hac Vice*)
dsilverman@omm.com

**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701

***Attorneys for Defendant Google LLC***

21

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 19, 2019, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steve McConnico*
Steve McConnico